1
2
3
4
5
6
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
7
AT SEATTLE
8
HENRI CALDERON-RODRIGUEZ,
9
Petitioner,                    Case No. C18-1373-JLR-MAT
10
v.                                  REPORT AND RECOMMENDATION
11
BRYAN S. WILCOX, et al.,
12
Respondents.
13

14
I.      INTRODUCTION
15
This is an immigration habeas action brought under 28 U.S.C. § 2241.  Petitioner, a native
16
and citizen of El Salvador, has been in the custody of U.S. Immigration and Customs Enforcement
17
("ICE") for over six and a half years while his removal proceedings have been pending.  At each
18
of his five bond hearings, the immigration judge ("IJ") concluded that no amount of bond or
19
conditions of release could prevent petitioner's flight or protect the community from the danger
20
he presents.  Her justification: DUIs from 2005 and 2007, and a DUI/vehicular assault conviction
21
from 2011.  While certainly serious crimes, the most severe criminal sentence he received was
22
three months of work release and 12 months of probation.  He was never sentenced to any jail
23
time.  The convictions are the basis for his exceedingly lengthy civil detention.

REPORT AND RECOMMENDATION - 1

While detention pending removal proceedings is constitutionally permissible, it must comport with due process. Among other requirements, the Government must justify prolonged detention with clear and convincing evidence that the noncitizen presents a current flight risk or danger to the community. Dangerousness cannot be based on criminal history alone; the severity and recency of the criminal conduct must be taken into account. The IJ also must consider changes in circumstances that would make recidivism less likely. Finally, although the Court cannot review the IJ's discretionary judgment, it may review the record for constitutional claims and legal error and to ensure that the clear and convincing evidence standard is met as a matter of law.

In this case, petitioner seeks release from immigration detention or a new bond hearing. The Government moves to dismiss. Having considered the parties' submissions, the balance of the record, and the governing law, the Court concludes that petitioner is not entitled to release but is entitled to a new bond hearing.[1] The IJ erred as a matter of law in failing to consider petitioner's flight risk and dangerousness on a current basis. In addition, given that petitioner's only criminal history involves alcohol and driving, and there is evidence in the record regarding petitioner's sobriety and willingness to refrain from driving if he is released, the Court concludes that there is not clear and convincing evidence in the record that justifies his continued detention.

Accordingly, the Court recommends that both the Government's motion to dismiss and petitioner's habeas petition be GRANTED in part and DENIED in part. Petitioner's request for immediate release should be denied, but the Government should be ordered to release him on appropriate conditions within 30 days unless, at a new bond hearing, it presents clear and convincing evidence that he presents a *current* flight risk or danger to the community.

/ / /

---

[1] Petitioner requested oral argument. The Court finds this matter suitable for resolution without argument and DENIES petitioner's request.

REPORT AND RECOMMENDATION - 2

1

## II.    BACKGROUND

2      Petitioner is a native and citizen of El Salvador who initially entered the United States

3 without inspection in July 2001.  Dkt. 5-1 at 2.  He lived in California, Texas, and South Carolina

4 before moving to Washington, where his mother was living, in August 2009.  *Id.* at 12-15.  While

5 he was living in South Carolina, he committed misdemeanor DUIs in 2005 and 2007.  *Id.* at 31.

6 On August 14, 2011, petitioner again drove under the influence, this time causing an accident that

7 injured a passenger in the other car.  *Id.* at 22-29, 91.  Petitioner drove away from the scene but

8 returned after witnesses caught up with him five blocks away.  *Id.* at 91.  Petitioner subsequently

9 pleaded guilty to DUI/vehicular assault and was sentenced to three months of work release and 12

10 months of parole.  *Id.* at 17, 95-116.

11      On June 7, 2012, ICE officers arrested petitioner at his home in Burien, Washington, and

12 transferred him to the Northwest Detention Center.  *Id.* at 3, 123.  He was served with a Notice to

13 Appear, charging him as removable because he was not lawfully admitted or paroled into the

14 country.  *Id.* at 118, 120-21.  As discussed below, petitioner's removal proceedings are ongoing

15 and he has remained in detention since his arrest over six and a half years ago.

16 A.    Petitioner's removal proceedings

17      On July 10, 2012, petitioner conceded removability from the United States.  *Id.* at 127-28.

18 He subsequently applied for cancellation of removal.  *Id.* at 136-37, 146.  On August 1, 2013, an

19 IJ held a hearing on his application.  *Id.* at 6-89.  In a written decision dated August 28, 2013, she

20 found that petitioner presented credible testimony and was statutorily eligible for cancellation of

21 removal, but she denied his application as a matter of discretion based on his criminal history,

22 finding that he "engaged in a pattern of potentially dangerous criminal misconduct in the United

23 States."  *Id.* at 152-58.  The IJ went on, "His criminal misconduct escalated and culminated in

1   injury to others and damage to property.  The driving offenses involving alcohol span a number of

2   years with the last offense being recent and serious . . . .  [He] has shown a disregard for the laws

3   in the United States and for the safety of others." *Id.* at 157-58.  The IJ also denied petitioner's

4   request for post conclusion voluntary departure and ordered him to be removed to El Salvador. *Id.*

5   at 158-59.

6        Petitioner appealed to the Board of Immigration Appeals ("BIA"), which dismissed his

7   appeal. *Id.* at 162-64.  Petitioner filed a petition for review in the Ninth Circuit, which stayed his

8   removal. *Id.* at 166-67.  On August 12, 2014, the Ninth Circuit granted the government's

9   unopposed motion to remand the case to the BIA to consider whether the IJ properly addressed the

10  issue of petitioner's mental competency. *Id.* at 169.  On January 30, 2015, the BIA remanded the

11  matter to the IJ for further proceedings. *Id.* at 172.

12       On August 3, 2015, the IJ held a hearing and, after considering all of the evidence including

13  the parties' submissions regarding petitioner's mental competency, the IJ found that petitioner was

14  competent to proceed *pro se* and again denied his application for cancellation of removal and

15  request for voluntary departure. *Id.* at 190-92, 201-02, 205.  The BIA adopted the IJ's competency

16  evaluation. *Id.* at 212.  Petitioner sought review with the Ninth Circuit.  *See id.* at 207.  On January

17  3, 2018, the Ninth Circuit found that the BIA abused its discretion by affirming the IJ's inaccurate

18  factual findings about the mental health evidence in the record and the IJ's failure to apply the

19  correct standards. *Id.* at 207-17.  The court remanded the case to the BIA with instructions to send

20  the case back to the IJ for a competency evaluation based on current mental health reviews and

21  medical records. *Id.* at 217.

22       On September 17, 2018, the IJ held a third hearing and again found petitioner competent

23  and denied his application for relief from removal. *Id.* at 220-31.  Petitioner's appeal to the BIA

REPORT AND RECOMMENDATION - 4

1    is currently pending.  *See* Dkts. 8-3, 8-4.

2    B.    Petitioner's custody determinations

3        Petitioner has received five bond hearings, all before the same IJ.  He was represented by

4    counsel at the first and appeared *pro se* at the others.  Following the last bond hearing, ICE

5    reviewed petitioner's custody status.  Most recently, petitioner requested a new bond hearing based

6    on changed circumstances but was denied.  The details of these events are described below.

7        1.    *Bond hearings*

8        On August 6, 2012, the IJ held a bond hearing pursuant to 8 U.S.C. § 1226(a) and denied

9    bond.  Dkt. 5-1 at 233.  There are no details in the record regarding this hearing.

10        On June 11, 2014, petitioner received a *Casas* bond hearing.[2]  Dkt. 5-1 at 237, 239.  The IJ

11    placed the burden on the government to justify continued detention.  *Id.* at 242.  The IJ denied

12    bond, finding that petitioner was a flight risk and danger to the community based on his criminal

13    history.  *Id.* at 239, 243-45.  In the IJ's written memorandum, she explained that petitioner

14    "engaged in a pattern of dangerous criminal misconduct" and that his driving offenses involving

15    alcohol spanned a number of years and culminated in the latest offense, which was "recent and

16    serious."  *Id.* at 245.  Petitioner appealed to the BIA, which dismissed his appeal.[3]  *Id.* at 247-55.

17        On August 21, 2014, the IJ held a *Franco-Gonzalez* bond hearing.[4]  Dkt. 5-1 at 260-65.

18    The IJ placed the burden on the government to justify continued detention.  *Id.* at 262.  The IJ

19    found that petitioner's mental health issues did not impair his ability to understand the nature and

20

21        [2] *See Casas-Castrillon v. Dept. of Homeland Sec.*, 535 F.3d 942 (9th Cir. 2008) (a noncitizen subject to prolonged detention while his/her removal proceedings are pending is entitled to a bond hearing).

22        [3] The BIA's decision is not in the record, but the parties appear to agree it was dismissed.  *See* Dkt. 4 at 6 n.1; Dkt. 7 at 5.

23        [4] *See Franco-Gonzalez v. Holder*, No. 10-cv-2211, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013) (class action lawsuit requiring bond hearings for noncitizens who have been detained by ICE for more than six months and who have been identified by medical personnel as having a serious mental disorder).

REPORT AND RECOMMENDATION - 5

1    purpose of the proceedings. *Id.* at 263. The IJ denied bond, finding that the government met its

2    burden based on petitioner's criminal history and limited forms of relief from removal. *Id.* at 264,

3    267. Petitioner appealed to the BIA, which remanded for further findings on petitioner's

4    competency to represent himself in these proceedings. *Id.* at 270.

5    On March 12, 2015, petitioner had another *Franco-Gonzalez* bond hearing. *Id.* at 272-77.

6    The IJ again found petitioner competent and denied bond based on his criminal history. *Id.* at 276,

7    279, 282-85. The IJ reiterated the same analysis as in the *Casas* hearing, namely that petitioner

8    "engaged in a pattern of dangerous criminal misconduct" and that his driving offenses involving

9    alcohol spanned a number of years and culminated in the latest offense, which was "recent and

10   serious." *Id.* at 284. The BIA dismissed petitioner's appeal, finding that the IJ's competency

11   determination was not clearly erroneous and that the IJ properly found that the government

12   presented clear and convincing evidence that petitioner presents a danger to the community based

13   on his criminal history. *Id.* at 288. The BIA did not address the IJ's flight risk finding.

14   On December 4, 2015, petitioner received a *Rodriguez* bond hearing.[5] Dkt. 6-1. The IJ

15   found, based on the entirety of the evidence in the record, that the government met its burden and

16   denied bond. Dkt. 6-1; Dkt. 5-1 at 290; Dkt. 6-2. The IJ again relied on the same analysis as her

17   previous opinions, explaining that petitioner "engaged in a pattern of dangerous criminal

18   misconduct" and that his driving offenses involving alcohol spanned a number of years and

19   culminated in the latest offense, which was "recent and serious." Dkt. 6-2 at 6. The IJ also noted

20   that DHS had informed the court that petitioner was subject to administrative action at the

21   Northwest Detention Center for sending an inappropriate and sexually explicit letter to a female

22

23       [5] *See Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060 (9th Cir. 2015) (noncitizens who are detained
pending removal proceedings are entitled to a bond hearing every six months while in detention), *rev'd sub nom
Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).

REPORT AND RECOMMENDATION - 6

mental health provider.[6]  *Id.*  Petitioner filed an appeal, but the parties have not provided the Court with a copy of the BIA's decision.  *See* Dkt. 5-1 at 292-98.

### 2.    *ICE's custody review*

On April 1, 2016, ICE conducted a custody review and issued a decision to continue detention, concluding that petitioner would be a risk to the community and asserting that his removal is expected in the reasonably foreseeable future.  *Id.* at 312.  ICE did not find that petitioner presents a flight risk.  *See id.*

### 3.    *Petitioner's motion for a bond redetermination*

On July 18, 2018, petitioner filed a motion, through counsel, for a bond redetermination based on changed circumstances.  Dkt. 8-1; *see also* 8 C.F.R. § 1003.19(e) (once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination).  The motion included new information regarding his wife's disabilities, his mother's health problems, his sobriety, and his plans to continue substance abuse treatment upon his release.  *See* Dkt. 8-1.  He also argued that the length of his detention warranted reconsideration of bond.  *Id.*  On August 2, 2018, the IJ denied petitioner's motion, declining to find materially changed circumstances.  Dkt. 8-2.  The record does not indicate whether petitioner appealed this determination.

### C.    Petitioner's detention

Until January 2016, petitioner was housed at the Northwest Detention Center.  Dkt. 8-1 at 11.  He was employed through the facility, received mental health counseling once or twice a week,

---

[6] Petitioner was given an opportunity to dispute this contention at the hearing but did not.  *See* Dkt. 6-1 at 6. Nevertheless, he now objects to DHS's reliance on this information because there is no supporting evidence in the record.  Dkt. 7 at 12 n.6.  The Government did not offer a rebuttal to this argument.

and regularly took prescription medication for depression.  *Id.*  He also received visits from his wife and stepson approximately twice a month and had daily phone contact with them.  *Id.*

On January 6, 2016, he was transferred to the Northern Oregon Regional Correctional Facility ("NORCOR") in The Dalles, Oregon.  *Id.*  He was housed in a dorm room alongside jail inmates, some of whom fought constantly.  *Id.*  Petitioner worried for his safety and described the move as "extremely traumatic."  *Id.*  His medical history, including the notes from his counselor and his prescriptions, were not provided to the facility, although he eventually was provided with a prescription for an antidepressant.  *Id.*  While at NORCOR, he did not have any contact—in person or by phone—with his wife or stepson, or access to an attorney.  *Id.*

In March or April 2016, petitioner was transferred to the Etowah County Detention Center in Alabama, a trip that took approximately two weeks.  *Id.* at 12.  Due to overcrowding—not safety or behavioral concerns—he spent his first 70 days there in solitary confinement where he was locked down 24 hours per day.  *Id.*  After that, he was housed with jail inmates.  *Id.*  He was constantly worried about his safety and at one point, he was attacked.  *Id.*  When he reported the attack to corrections officers, nothing was done.  *Id.*  Petitioner also received inadequate health care.  *Id.*  He had an ear infection, which jail staff refused to treat for weeks, and he now has permanent hearing damage in one ear.  *Id.* at 12-13.  He continued to have mental health difficulties, which were treated with medication but no counseling.  *Id.* at 12.  While at Etowah, petitioner was able to have telephone contact with his mother, but for some reason his wife's number was blocked and jail staff were unable to unblock the number.  *Id.*  Etowah staff also constantly pressured plaintiff to sign his deportation order and abandon his attempts to remain in the United States with his wife and mother.  *Id.*

On January 30, 2018, petitioner was transferred back to the Northwest Detention Center.

REPORT AND RECOMMENDATION - 8

1   *Id.* at 13.  He resumed his work at the facility and started counseling again.  *Id.*  Although petitioner

2   is back in Tacoma, his wife has been unable to visit him because of her own health problems.  *Id.*

3                                    III.      <u>DISCUSSION</u>

4          This action raises two primary issues: whether petitioner's continued detention violates the

5   Fifth Amendment's Due Process Clause and/or the Eighth Amendment's prohibition on cruel and

6   unusual punishment.  The Court discusses each issue in turn.

7   A.      <u>Fifth Amendment</u>

8          Petitioner contends that his continued detention violates due process because the IJ and

9   BIA erred as a matter of law in denying bond and because his detention has become unreasonable

10  and unjustified.   Federal district courts have habeas jurisdiction to review bond hearing

11  determinations for constitutional claims and legal error.  *Singh v. Holder*, 638 F.3d 1196, 1202

12  (9th Cir. 2011).  Although an IJ's discretionary judgment may not be judicially reviewed, 8 U.S.C.

13  § 1226(e), "claims that the discretionary process itself was constitutionally flawed are cognizable

14  . . . ."  *Singh*, 638 F.3d at 1202.  Thus, the Court has jurisdiction over petitioner's claims.  As

15  discussed below, the IJ erred as a matter of law and therefore petitioner is entitled to a new bond

16  hearing; he is not, however, entitled to release.

17          1.      *Statutory framework for immigration detention*

18          Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of

19  noncitizens, such as petitioner, who are in removal proceedings.  8 U.S.C. § 1226; *see also Demore*

20  *v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally

21  permissible part of that process.").  Section 1226(a) grants DHS the discretionary authority to

22  determine whether a noncitizen should be detained, released on bond, or released on conditional

23  parole pending the completion of removal proceedings, unless the noncitizen falls within one of

REPORT AND RECOMMENDATION - 9

the categories of criminals described in § 1226(c), for whom detention is mandatory.[7]  8 U.S.C. § 1226.

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond.  *See* 8 C.F.R. § 236.1(c)(8).  After the initial custody determination, the detainee may request a bond redetermination by an IJ.  8 C.F.R. § 236.1(d)(1).  At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond.  *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006).  Once an IJ has made an initial bond redetermination, a detainee's request for a subsequent bond redetermination must be made in writing and must show that the detainee's circumstances have changed materially since the prior bond redetermination.  8 C.F.R. § 1003.19(e).

If the IJ denies bond, the detainee may appeal to the BIA.  8 C.F.R. §§ 236.1(d)(3), 1003.19(f).  If the BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court.  *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932, 941 (9th Cir. 2004).

Until recently, Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided automatic bond hearings every six months at which the government was required to justify continued detention by clear and convincing evidence.  *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015), *rev'd sub nom Jennings v. Rodriguez*, 138 S. Ct. 830 (2018).  In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme

---

[7] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals.  *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

Court reversed, explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. *Id.* at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings, and remanded to the Ninth Circuit for consideration of that question. The Ninth Circuit has remanded to the district court to determine the minimum requirements of due process, including reassessing and reconsidering both the clear and convincing evidence standard and the six-month bond hearing requirement. *Rodriguez v. Marin* ("*Rodriguez IV*"), 909 F.3d 252, 255-56 (9th Cir. 2018).

2.    *Due process requirements for bond hearings*

To detain a noncitizen for a prolonged period of time while removal proceedings are pending, due process requires the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.[8] *Singh*

---

[8] The Government questions whether the clear and convincing evidence standard survives *Jennings*. Dkt. 10 at 5. The Court concludes that it does, based on the reasoning in *Cortez v. Sessions*, 318 F. Supp. 3d 1134 (N.D. Cal. 2018):

> In *Singh*, the Ninth Circuit held that "the government must prove by clear and convincing evidence that [a noncitizen] is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." 638 F.3d at 1203. *Singh* observed that the "Supreme Court has repeatedly reaffirmed the principle that 'due process places a heightened burden of proof on the State in civil proceedings in which the 'individual interests at stake . . . are both particularly important and more substantial than mere loss of money.'" *Id.* at 1204 (quoting *Cooper v. Oklahoma*, 517 U.S. 348, 363, 116 S. Ct. 1373, 134 L.Ed.2d 498 (1996)). *See also Ramos II*, 293 F. Supp. 3d at 1028 (holding that clear and convincing evidence standard applies to bond hearings for noncitizens detained pursuant to section 1231(a)(6)).

> *Jennings* held that the Ninth Circuit erred in construing section 1226(a), stating that "[n]othing in § 1226(a)'s text . . . supports the imposition" of the procedural protections ordered by the Ninth Circuit—"namely, periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the [noncitizen's] continued detention is necessary." 138 S. Ct. at 847. The Court did not engage in any discussion of the specific evidentiary standard applicable to bond hearings, and there is no indication that the Court was reversing the Ninth Circuit as to that particular issue. Accordingly, the court declines to find that *Jennings* reversed the clear and convincing evidence standard announced in *Singh* or later Ninth Circuit cases relying on *Singh*'s reasoning.

REPORT AND RECOMMENDATION - 11

1    *v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011); *see also Ngo v. INS*, 192 F.3d 390, 398 (3d Cir.

2    1999) ("Measures must be taken to assess the risk of flight and danger to the community on a

3    *current basis*.") (emphasis added).

4    To make this determination, the IJ may consider any number of discretionary factors,

5    including:  (1) whether the detainee has a fixed address in the United States; (2) the detainee's

6    length of residence in the United States; (3) the detainee's family ties in the United States, and

7    whether they may entitle the detainee to reside permanently in the United States in the future; (4)

8    the detainee's employment history; (5) the detainee's record of appearance in court; (6) the

9    detainee's criminal record, including the extensiveness of criminal activity, the recency of such

10   activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations;

11   (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the

12   detainee's manner of entry to the United States.  *Guerra*, 20 I. & N. Dec. at 40; *see also Singh*,

13   638 F.3d at 1206.

14   The Ninth Circuit has provided additional guidance: "Although [a noncitizen's] criminal

15   record is surely relevant to a bond assessment, . . . criminal history alone will not always be

16   sufficient to justify denial of bond on the basis of dangerousness.  Rather, the recency and severity

17   of the offenses must be considered."  *Singh*, 638 F.3d at 1206.  "[B]ecause the IJ must consider

18   'the recency and severity of [any past] offenses,' evidence of criminal conduct grows less powerful

19   as it becomes less current.  Thus, the passage of time is undeniably relevant and the IJ must

20   consider it."  *Ramos v. Sessions* ("*Ramos II*"), 293 F. Supp. 3d 1021, 1034 (N.D. Cal. 2018)

21

22

23   *Cortez*, 318 F. Supp. 3d at 1146-47; *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905
     F.3d 208, 224 n.12 (3d Cir. 2018) (adopting *Singh*'s clear and convincing evidence standard post-
     *Jennings*); *Darko v. Sessions*, --- F. Supp. 3d ----, 2018 WL 5095671, at *5-*6 (S.D.N.Y. Oct. 19,
     2018) (same); *Hernandez v. Decker*, No. 18-cv-5026, 2018 WL 3579108, at *10-*11 (S.D.N.Y Jul.
     25, 2018) (same).

1    (internal citation to *Singh* omitted).  This does not mean, however, "that criminal conviction

2    evidence inevitably loses its persuasive force" or that the government must present new evidence

3    of dangerousness at each successive bond hearing.  *Id.* at 1033-34.

4         Moreover, "not every criminal record would support a finding of dangerousness. . . .  [A]

5    conviction could have occurred years ago, and the [noncitizen] could well have led an entirely law-

6    abiding life since then."  *Singh*, 638 F.3d at 1206.  The IJ also must consider whether the detainee's

7    circumstances have changed such that criminal conduct is now less likely.  *Id.* at 1205 ("[T]he BIA

8    focused on Singh's prior convictions for petty theft, receiving stolen property and substance abuse.

9    Under a clear and convincing evidence standard, the BIA might conclude that Singh's largely

10   nonviolent prior bad acts do not demonstrate a propensity for future dangerousness, in view of

11   evidence showing that his drug use, which was the impetus for his previous offenses, has ceased.").

12        "The clear and convincing evidence standard is a high burden and must be demonstrated

13   in fact."  *Ramos II*, 293 F. Supp. 3d at 1030 (quotation and citation omitted).

14        Petitioner asks the Court to also require that the IJ take into account the length of detention

15   as a factor independent of flight risk and dangerousness.  Dkt. 7 at 11.  Petitioner relies on

16   *Rodriguez III*:

17       In our prior decisions, we have not directly addressed whether due process requires
         consideration of the length of future detention at bond hearings.  We have noted,
18       however, that "the due process analysis changes as 'the period of . . . confinement
         grows,'" and that longer detention requires more robust procedural protections.
19       *Diouf II*, 634 F.3d at 1086 (quoting *Zadvydas*, 533 U.S. at 701, 121 S. Ct. 2491).
         Accordingly, a non-citizen detained for one or more years is entitled to greater
20       solicitude than a non-citizen detained for six months.  Moreover, Supreme Court
         precedent provides that "detention incidental to removal must bear a reasonable
21       relation to its purpose."  *Tijani*, 430 F.3d at 1249 (Tashima, J., concurring) (citing
         *Demore*, 538 U.S. at 527, 123 S. Ct. 1708; *Zadvydas*, 533 U.S. at 690, 121 S. Ct.
22       2491).  At some point, the length of detention could "become[ ] so egregious that
         it can no longer be said to be 'reasonably related' to [a noncitizen's] removal."  *Id.*
23       (citation omitted).  An IJ therefore must consider the length of time for which a
         non-citizen has already been detained.

REPORT AND RECOMMENDATION - 13

1   *Rodriguez III*, 804 F.3d at 1089.  Petitioner maintains that because the Supreme Court in *Jennings*

2   only overruled *Rodriguez III*'s statutory interpretation, the Ninth Circuit's due process analysis

3   remains persuasive authority.   Dkt. 7 at 11.   The Government replies that the length of a

4   noncitizen's detention is not a relevant consideration in determining whether a bond is warranted,

5   citing the criminal context where bail determinations are based on flight risk and danger to the

6   community.  Dkt. 10 at 2-3.

7          Although the Supreme Court has expressed concern that lengthy detention may not bear a

8   reasonable relation to its purpose, neither *Zadvydas* nor *Demore*, the relevant authority, support

9   the conclusion that due process requires IJs to consider the length of detention, independent of

10  assessing flight risk and dangerousness.  In *Zadvydas*, the Court held that permitting indefinite

11  detention would raise "serious constitutional concerns."  *Zadvydas*, 533 U.S. at 690.  The Court

12  reasoned, in part, that one goal of detention—preventing flight—"is weak or nonexistent where

13  removal seems a remote possibility at best."  *Id.*  The Court noted, "[W]here detention's goal is no

14  longer practically attainable, detention no longer bears a reasonable relation to the purpose for

15  which the individual was committed."  *Id.* (internal quotation and citation omitted).  To avoid

16  constitutional concerns, the Court's solution was to create a burden-shifting scheme:  after six

17  months of post-removal-order detention, if a noncitizen could come forward with a "good reason

18  to believe that there is no significant likelihood of removal in the reasonably foreseeable future,

19  the Government must respond with evidence sufficient to rebut that showing."  *Id.* at 701.  The

20  Court, however, did not mandate bond hearings for noncitizens whose detention was prolonged

21  but not "indefinite."[9]

22         In *Demore*, the Court held that mandatory detention during removal proceedings for

---

[9] After *Zadvydas*, the Ninth Circuit held that noncitizens in post-removal-order detention are entitled to bond hearings after six months.  *Diouf II*, 634 F.3d at 1091-92.

REPORT AND RECOMMENDATION - 14

criminal noncitizens under § 1226(c) did not violate the constitution. *Demore*, 538 U.S. at 531.

Justice Kennedy concurred, noting, "[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [noncitizen] such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). Thus, Justice Kennedy's proposed solution to unreasonable or unjustified mandatory detention was to provide the noncitizen with a bond hearing. He expressly provided that the hearing was to assess flight risk and dangerousness, and he did not suggest that IJs also consider length of detention.

Absent biding authority holding that due process requires IJs to consider length of detention, the Court declines to adopt this additional requirement.

3.    *The Court's standard of review*

In challenging the IJ's denial of bond, petitioner argues that the immigration courts erred in finding that the government presented clear and convincing evidence that justified his continued detention. *See* Dkt. 7 at 10-14. The Government responds that the BIA found that the government presented clear and convincing evidence of petitioner's dangerousness, and that petitioner cannot challenge the immigration courts' exercise of discretion. Dkt. 10 at 5. Essentially, the Government's position is that the court's only job is to ensure that the immigration courts recite the correct legal standard. The Court finds such a standard of review "insufficient." *Ramos II*, 293 F. Supp. 3d at 1030 (citing *Nat'l Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision."); *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011) ("[W]here there is any indication that the

REPORT AND RECOMMENDATION - 15

1    BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the

2    decision cannot stand. Such indications include misstating the record and failing to mention highly

3    probative or potentially dispositive evidence.")).

4    The Ninth Circuit has not provided guidance "on precisely what standard of review a

5    district court should apply in reviewing an IJ's application of the clear and convincing evidence

6    standard of proof." *Id.* In *Ramos II*, the court undertook an extensive discussion of the appropriate

7    standard of review, including reviewing numerous district court decisions from within the Ninth

8    Circuit. Ultimately, the court concluded that it "reviews the IJ's factual findings for clear error,

9    and independently reviews the facts, findings, and record to determine, *de novo*, whether those

10   facts clearly and convincingly demonstrate that [the petitioner] poses such a danger to the

11   community [or flight risk] that [he or she] must remain detained, including because no alternative

12   to detention could protect the community [or prevent flight]." *Id.* at 1032-33. The Court agrees

13   with *Ramos II*'s analysis and adopts this standard of review.

14      4.      *Sufficiency of petitioner's bond hearings*

15   Petitioner contends that the IJ erred as a matter of law because she failed to consider current

16   flight risk and dangerousness and because there is insufficient evidence in the record to satisfy the

17   clear and convincing evidence standard. Dkt. 7 at 11-14. The Government's primary

18   counterargument is that petitioner challenges how the IJ exercised her discretion, which is not

19   subject to judicial review. Dkt. 10 at 5. As discussed above, however, the Court does not simply

20   rubberstamp an IJ's decision because she recited the appropriate standard. Rather, to ensure that

21   petitioner's due process rights are protected, the Court undertakes a closer review.

22   In the IJ's bond memorandum from the June 2014, March 2015, and December 2015 bond

23   hearings, she concluded that petitioner's 2012 DUI/vehicular assault conviction was "recent and

1   serious." Dkt. 5-1 at 245, 284; Dkt. 6-2 at 6.  As petitioner points out, however, her analysis of

2   the recency factor did not change over the 18 months between the June 2014 and December 2015

3   hearings.  *Compare* Dkt. 5-1 at 245, *with* Dkt. 6-2 at 6.  Thus, she did not meaningfully consider

4   the impact of the passage of time on the persuasive value of petitioner's criminal history, as

5   required by *Singh*.  *See Ramos II*, 293 F. Supp. 3d at 1034 ("the passage of time is undeniably

6   relevant and the IJ must consider it" (citing *Singh*)).  In this respect, the IJ erred as a matter of law.

7        Moreover, having reviewed the record under the standard articulated in *Ramos II*, the Court

8   concludes that the facts do not clearly and convincingly demonstrate that petitioner poses such a

9   flight risk or danger to the community that he must remain detained.  The IJ's decision to deny

10  bond is based entirely on petitioner's criminal history.  As an initial matter, petitioner's criminal

11  history does not amount to clear and convincing evidence that he presents a flight risk, particularly

12  given that he can be placed on an ankle monitor, there is no evidence that he failed to comply with

13  any court order in his criminal cases, and his wife and mother, who both have health issues, live

14  in the Seattle area.  *See Ramos II*, 293 F. Supp. 3d at 1033, 1037 (conditions of supervision relevant

15  to assessment of whether clear and convincing evidence standard was satisfied).  In addition,

16  neither the BIA nor ICE found petitioner to be a flight risk.  *See* Dkt. 5-1 at 288, 312.

17       Turning to the dangerousness factor, petitioner's criminal history includes two

18  misdemeanor DUIs from 2005 and 2007, and a felony DUI/vehicular assault conviction from 2012.

19  These are serious crimes.  As the IJ found, the most recent was also the most serious, and petitioner

20  injured another person and damaged property.  Nevertheless, the sentencing judge declined to

21  sentence petitioner to any jail time, even though the standard range for petitioner's offender score

22  was 3-9 months.  *See* Dkt. 5-1 at 96.  At the time ICE arrested him, petitioner was in the process

23  of completing the noncustodial terms of his conviction and was complying with his probation.

REPORT AND RECOMMENDATION - 17

1    Petitioner's most recent criminal activity occurred in August 2011, over four years before his

2    December 2015 bond hearing, and over seven years from the date of this Report and

3    Recommendation.  There are also indications in the record that petitioner has been sober since the

4    accident, would continue treatment for alcohol addiction if released, and could be released on the

5    condition that he refrain from operating motor vehicles.  *See* Dkt. 1 at ¶ 21; Dkt. 8-1; *Singh*, 638

6    F.3d at 1205 (IJ must consider whether changed circumstances, such as sobriety, affect current

7    dangerousness).  Based on this record, the Court concludes that clear and convincing evidence

8    does not support the IJ's decision to deny bond or release on appropriate conditions.

9          The Court's conclusion aligns with district court decisions from this circuit.  For example,

10   in *Mau v. Chertoff*, 562 F. Supp. 2d 1107 (S.D. Cal. 2008), the IJ denied release where the

11   petitioner, who had been detained for over three years, had two misdemeanor DUIs and one felony

12   DUI that were between four and six years old.  *Id.* at 1118.  The court found that the petitioner's

13   "past DUI convictions, while serious, cannot independently justify his continued indefinite

14   detention, especially in light of the fact that the detention period (which has surpassed three years)

15   has nearly doubled the 16 month penalty Petitioner received for that crime."  *Id.*  The court

16   concluded, "Under the circumstances, the IJ's reliance on [these] convictions . . . as the basis for

17   the finding of present dangerousness was an error of law."  *Id.*  Petitioner in this case and the

18   petitioner in *Mau* have very similar criminal histories.  Petitioner's claim of error, however, is

19   stronger because he received no jail time for his most serious crime, whereas the petitioner in *Mau*

20   received 16 months, and yet petitioner's detention is more than twice as long as in *Mau*.  Thus,

21   like in *Mau*, the IJ in this case erred in finding dangerousness based on petitioner's criminal history.

22          *Ramos II* is also instructive.  There, the IJ denied bond where the petitioner had two non-

23   violent misdemeanor DUIs from 2015 and 2016 and was never sentenced to any custodial time.

REPORT AND RECOMMENDATION - 18

296 F. Supp. 3d at 1024.  The court found that clear and convincing evidence did not support continued detention, reasoning that the petitioner never served time in jail, was complying with the terms of her probation when ICE arrested her, was committed to addressing her alcohol addiction, and the most recent offense occurred 16 months earlier.  *Id.* at 1036-37.  The court also found that there were many alternatives to detention that would be sufficient to protect the public from any danger the petitioner posed.  *Id.* at 1037.  While the offenses in *Ramos II* were less significant than in petitioner's case, both petitioners received no jail time for their crimes.  The cases are also similar in that both petitioners were complying with the terms of their probations when ICE arrested them, and the petitioners indicated a commitment to remaining sober and obtaining help with that commitment upon release.  In addition, the offenses in *Ramos II* occurred much more recently, only 16 months before the court's opinion whereas petitioner's most recent offense occurred approximately 89 months ago.  The *Ramos II* court's conclusion that appropriate alternatives to detention could be imposed to protect the public from any risk the petitioner posed is equally applicable here, particularly given that petitioner's only criminal history involves alcohol and driving.

Both *Mau* and *Ramos II* support the Court's conclusion that the Government has not presented clear and convincing evidence, as a matter of law, that justifies petitioner's continued detention.

     5.    *Remedy*

For relief, petitioner asks the Court to release him because his lengthy detention is both "unreasonable and unjustified."  Dkt. 7 at 16.  Petitioner seizes on language from Justice Kennedy's concurring opinion in *Demore*, quoted in full above.  *See supra* p. 15.  As noted, however, Justice Kennedy's proposed remedy for unreasonable or unjustified detention was a bond

1    hearing, not release.  *Id.*  The same remedy is appropriate in this case, particularly given the length

2    of time since petitioner's last bond hearing.  Only if the government is unable to justify petitioner's

3    continued detention, at a new bond hearing conducted under the standards articulated above,

4    should he be released on appropriate conditions.

5    B.    Eighth Amendment

6          Petitioner contends that his continued detention violates the Eighth Amendment.  *See* Dkt.

7    1.  The Government argues that petitioner fails to state a claim because the Eighth Amendment

8    does not apply to immigration detention.  Dkt. 4 at 12.  The Government cites two recent district

9    court cases that denied Eighth Amendment claims in immigration habeas actions.  *Milan-*

10   *Rodriguez v. Sessions*, 16-cv-1578, 2018 WL 400317, at *6 (E.D. Cal. Jan. 12, 2018) (Report and

11   Recommendation); *Slim v. Nielson*, 18-cv-2816, 2018 WL 4110551, at *7 (N.D. Cal. Aug. 29,

12   2018).  These cases relied on *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("A deportation

13   proceeding is a purely civil action to determine eligibility to remain in this country, not to punish

14   an unlawful entry . . . ."), and *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002) ("It is well

15   established that deportation proceedings are civil, rather than criminal, in nature.").

16         In response, petitioner concedes that the Eighth Amendment does not apply to most

17   instances of immigration detention.  Dkt. 7 at 18.  He argues, however, that his detention—given

18   its length, multiple transfers, housing among criminal detainees and prisoners, and 70 days in

19   solitary confinement—has crossed the line into punishment.  *Id.* (citing *Bell v. Wolfish*, 441 U.S.

20   520, 536-37 (1979) (pretrial detention permissible under the Due Process Clause "so long as [the]

21   conditions and restrictions [of detention] do not amount to punishment")).  He maintains that the

22   alleged Eighth Amendment violation entitles him to release from detention.  Dkt. 7 at 21.  For

23   support, petitioner points to two civil rights cases brought by civil detainees under 42 U.S.C. §

1  1983, which challenged the conditions of their confinement, *Jones v. Blanas*, 393 F.3d 918 (9th

2  Cir. 2004), and *Kitchens v. Tordsen*, No. 12-cv-105, 2012 WL 6020018 (E.D. Cal. 2012).  Dkt. 7

3  at 19.

4          Both of these cases recognize that civil detainees cannot be held under conditions that

5  amount to "punishment."  But neither supports petitioner's claim that the alleged conditions of his

6  confinement entitle him to habeas relief.  To the extent petitioner seeks to recover from the

7  allegedly unconstitutional nature—as opposed to duration—of his confinement, his claims do not

8  belong in this immigration habeas action.  *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991)

9  ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or

10 duration' of confinement.  A civil rights action, in contrast, is the proper method of challenging

11 'conditions of . . . confinement.'") (cited sources omitted).  And to the extent petitioner contends

12 that the length of his immigration detention amounts to punishment in violation of the Eighth

13 Amendment, he fails to cite any caselaw that supports his position.  Petitioner's Eighth

14 Amendment claim should be denied.

15                          IV.    <u>CONCLUSION</u>

16         The Court recommends that the Government's motion to dismiss, Dkt. 4, be GRANTED

17 in part and DENIED in part, and petitioner's habeas petition, Dkt. 1, be GRANTED in part and

18 DENIED in part.  Petitioner's request for immediate release should be denied, but the Government

19 should be ordered to release him on appropriate conditions within 30 days unless, at a new bond

20 hearing, it presents clear and convincing evidence that he presents a *current* flight risk or danger

21 to the community.  A proposed order accompanies this Report and Recommendation.

22         Objections to this Report and Recommendation, if any, should be filed with the Clerk and

23 served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and

REPORT AND RECOMMENDATION - 21

Recommendation is signed.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 25, 2019**.

Dated this 9th day of January, 2019.


Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION - 22